UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEALTH RESCUE STRATEGIES, INC., *et al.*, | § § § § § § § § § § | |
| *Plaintiffs*, | | |
| v. | | CIVIL ACTION H-08-3107 |
| ROBERT W. THOMPSON, *et al.*, | | |
| *Defendants*. | | |

**ORDER**

Pending before the court is plaintiffs' Application to Appoint Arbitrator. Dkt. 33. After reviewing the parties' pleadings, responses, and the applicable law, the motion is **DENIED**. Also pending before the court is defendants' Motion to Compel FINRA Arbitration. Dkt. 36. After reviewing the parties' pleadings, responses, and the applicable law, the motion is **GRANTED**.

**I. BACKGROUND**

This action was transferred to this court in October 2008, and it involves contractual and tortious allegations arising from a business relationship between plaintiff Chris L. Jones ("Jones") and defendant Robert W. Thompson ("Thompson"). Dkts. 2, 9. Additional parties to the suit include plaintiff Wealth Rescue Strategies, Inc. ("Wealth Rescue"), a company that collects and distributes Jones's earnings, and defendants Sally Thompson, Thompson's wife, and First Texas Alliance Corporation and Nu-Source Financial Group, companies owned and operated by Thompson in his investment advisory business. Dkt. 2. Both Jones and Thompson are licensed securities representatives of Walnut Street Securities ("Walnut"). Dkt. 36. In turn, Walnut is a participating member of FINRA, a self-regulating body of the securities industry. *Id.* In order to comply with

employment requirements of Walnut (and those imposed by FINRA), both Jones and Thompson signed standard agreements known as U-4s, which contain a provision requiring arbitration of all disputes covered by the U-4 and FINRA.[1]  *Id.*

Central to this matter is a business relationship between Jones and Thompson, whereby the two would solicit clients to pool small individual investments in order to collectively meet the minimum dollar amounts required to participate in GE Private Asset Management ("GE"), a company now known as Genworth Financial Asset Management ("Genworth").  *Id.*  These individual investment accounts were maintained through Walnut, and as a requirement of participating, each client entered into a written fee agreement that split fees between Walnut, Jones, and Thompson.  *Id.*  A similar written agreement was formed between the client and GE/Genworth.  *Id.*  All fees earned were paid by Genworth to Walnut, who in turn distributed the fees to Jones and Thompson according to the relevant fee agreement.  Dkt. 2.  Jones now argues that Thompson modified several of these client fee agreements, thereby diverting fees from Jones to Thompson and his companies.  *Id.*

Procedurally, after several months of negotiation, the parties agreed to submit the matter to arbitration.  Plaintiffs contend that the parties jointly chose Alan Levin, a private arbitrator, to arbitrate.  Dkt. 33.  Conversely, defendants allege that the agreement to private arbitration was subject to "working out the procedural rules that would apply" to the proceedings.  Dkt. 36.  In either event, the parties jointly notified this court that arbitration was imminent, and thus all judicially-imposed deadlines were cancelled in mid-November, 2008, pending a ruling on the agreed

---

[1]The relevant U-4 provision notes that signatories agree to "arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or **any other person**, that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction."  Dkt. 36 (emphasis added).

2

motion to compel arbitration. After this point, negotiations between the parties halted, and each side sought the direction of this court. Plaintiffs now request that the court compel non-FINRA arbitration. Dkt. 33. Alternatively, defendants move the court to compel FINRA arbitration. Dkt. 36.

## II. ANALYSIS

### A.     Motion to Compel Arbitration

As a starting point, "[t]he Federal Arbitration Act ["FAA"] expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quoting *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). A court may compel arbitration under the FAA where a written provision in a commercial contract exists that signifies the signatories' desire to arbitrate. 9 U.S.C. §§ 2,4 (2008). In making this decision, a court must determine: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quotations omitted). Then, a court must decide "whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims." *Id.* Finally, the court notes that when a contract contains an arbitration clause, a presumption of arbitrability exists. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415 (1986).

In this case, the only written agreements containing an arbitration clause are the U-4s signed by Jones and Thompson in their employment relationship with Walnut. Dkt. 36. The Fifth Circuit has long-recognized that such U-4s can serve as the written agreement required by the FAA. *See*

3

*Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir. 1995). As noted above, this clause requires all disagreements subject to FINRA that exist between the signatory and any other person to be arbitrated in accordance with FINRA regulations. Dkt. 36. In turn, FINRA notes that any "dispute aris[ing] out of the business activities of a [M]ember or an [A]ssociated [P]erson and is between or among: Members; Members and Associated Persons; or Associated Persons" is necessarily a disputed governed by FINRA. FINRA Rule 13200(a). An Associated Person is defined as any "natural person registered under the Rules of FINRA"; both Jones and Thompson meet this definition. FINRA Rule 13100(a), (r); Dkt. 36. This FINRA-imposed duty to arbitrate is broad enough to encompass the business activities of Jones and Thompson in this matter based on the plain language of the contract and applicable rules. Therefore, the court finds that not only does an agreement to arbitrate exist in the U-4s, but the broad nature of the duty to arbitrate—all business activities between associated persons—clearly encompasses the claims at interest here. Finally, the parties do not argue, nor does the court find, any "legal constraints" that would require a different outcome in this matter. Therefore, all further arguments raised by the parties, other than those addressed below, shall be left to the arbitrator to decide.

Because the requirements under the FAA have been met, the court **ORDERS** that the parties submit to FINRA arbitration. Thus, the plaintiffs' motion to compel private arbitration is **DENIED**[2],

---

[2] In their motion, the plaintiffs argue that even without a written agreement required by the FAA, they are nontheless entitled to private arbitration. Dkt. 39. They argue that because the defendants entered into a preliminary agreement to use Mr. Levin as an arbitrator, they impliedly agreed to private arbitration rather than FINRA arbitration and thus are bound under an implied agreement to arbitrate theory. *Id.* However, the cases cited by plaintiffs are extremely dissimilar to the case here. In both of those cases, the parties fully participated in arbitration to the point of an award, after which point one party attempted to claim that no agreement to arbitrate existed. Unlike those cases, arbitration has not progressed in this instance beyond initial negotiations to submit to an arbitrator. The court is confident that the behavior of the parties in this case do not rise to the level of participation required by an implied agreement to arbitrate. *See P. MacGregor Enters. Inc. v. Penman Bldg. Prods., Ltd.*, 279 S.W.3d 717 (Tex. App.—Amarillo 2009, pet. denied); *Massey v. Galvan,* 822 S.W.2d 309, 315 (Tex. App.—Houston [14th Dist.] 1992, writ denied). For this reason, the court finds the plaintiffs' reasoning behind their request for private arbitration unpersuasive.

and the defendants' motion to compel FINRA arbitration is **GRANTED**.

**B.      Compelling Non-Signatories to Arbitration**

Although the agreements to arbitrate are signed only by Jones and Thompson, the defendants argue that plaintiff Wealth Rescue should similarly be compelled to arbitrate.[3]  Dkt. 36.  As the defendants note, a signatory may compel a non-signatory to arbitration under a theory of direct-benefit estoppel.  *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006). As the theory suggests, estoppel is appropriate where a non-signatory derives a direct benefit from the contract containing the arbitration clause.  *Id.*  "Direct-benefit estoppel 'involves non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause . . . ."  *Id.* at 517–18 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediaries, S.A.S.*, 269 F.3d 187, 200 (3rd Cir. 2001).  As Jones admits, plaintiff Wealth Rescue is assigned the revenues earned by Jones in his role as an investment advisor.  Included in these revenues are those Jones earned pursuant to his business relationship with Thompson.  The court finds that Wealth Rescue's collection of such fees establishes a direct benefit from the U-4 contracts, which contain the agreement to arbitrate, and thus the court **ORDERS** Wealth Rescue to submit to arbitration along with its co-plaintiff Jones.

**C.      Rule 12(b)(6) Motion to Dismiss**

Lastly, the parties refer to a Rule 12(b)(6) motion to dismiss initially mentioned by the

---

[3] Defendants Sally Thompson, First Texas Alliance Corporation, and Nu-Source Financial Group have moved to compel FINRA arbitration along with defendant Thompson.  Therefore, the court finds it unnecessary to address the ability to compel them to arbitration as non-signatories.  Had it been necessary, the court would have analyzed the situation under the theory of equitable estoppel, whereby non-signatories like these defendants could compel arbitration against signatories.  *See Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004).

defendants. Dkt. 36 ("Alternatively, Wealth Rescue is not [a] valid Plaintiff in this lawsuit as there are no factual allegations supporting any cause of action by Wealth Rescue. Thus, this Court should dismiss Wealth Rescue sua sponte based on Federal Rule of Civil Procedure (12)(b)(6)."). Because the defendants request this outcome in the alternative in the event of a unfavorable ruling on their request to compel arbitration, the court finds a decision based upon Rule 12(b)(6) unnecessary. Thus, the defendants' motion to dismiss is **DENIED AS MOOT**.

### III. Conclusion

Pending before the court is plaintiffs' Application to Appoint Arbitrator. Dkt. 33. Because the court finds that there was no implied agreement to arbitrate, the motion is **DENIED**. Also pending before the court is defendants' Motion to Compel FINRA Arbitration. Dkt. 36. Because the court finds that the requirements to compel arbitration under the FAA exist (at least as to plaintiff Jones), and the applicable governing body is FINRA, the motion is **GRANTED**. Additionally, the court **ORDERS** plaintiff Wealth Rescue to submit to arbitration under a direct-benefit estoppel theory. Finally, the defendant's Rule 12(b)(6) motion to dismiss is **DENIED AS MOOT**.

It is so ORDERED.

Signed at Houston, Texas on November 17, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY